` UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RALPH ADAMS,

    *Plaintiffs,*           CASE NO. 12-CV-11928

v.          DISTRICT JUDGE THOMAS L. LUDINGTON
         MAGISTRATE JUDGE CHARLES BINDER

BANK OF AMERICA, N.A., and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' PARTIAL MOTION TO DISMISS**
(Doc. 17)

**I.**     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED.**

**II.**     **REPORT**

    **A.**     **Introduction**

This action was filed on April 30, 2012. (Doc 1.) The complaint alleges the following claims: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; (2) breach of contract for breach of the covenant of good faith and fair dealing; (3) defamation of title; (4) discharge of lien and claim to quiet title; (5) violation of the Michigan Foreclosure Act, Mich. Comp. Laws § 600.3205a; (6) intentional infliction of emotional distress;

(7) request for equitable, declaratory, and injunctive relief; (8) fraud/misrepresentation; (9) quiet title; (10) unjust enrichment; (11) innocent/negligent misrepresentation; (12) fraud, based on silent fraud and bad faith promises; (13) fraud, based on silent fraud and bad faith promises; (14) breach of contract/wrongful foreclosure; (15) violation of Michigan foreclosure law; (16) violation of Michigan foreclosure law, Mich. Comp. Laws §§ 1672, 1673; (17) violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 *et seq.*; (18) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); (19) negligence; (20) negligence *per se* based on violation of the FCRA; (21) defamation by libel; (22) negligence and malicious statutory libel, Mich. Comp. Laws § 600.2911; (23) violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6); (24) violation of the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901(b); and (25) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d). (Doc. 1.)[1] The case was referred by United States District Judge Thomas L. Ludington to the undersigned magistrate judge for general case management on May 25, 2012. (Doc. 6.)

On January 22, 2013, Defendants Bank of America, N.A. ("BANA") and Federal National Mortgage Association ("Fannie Mae") filed the instant partially dispositive motion. (Doc. 17.)[2] Defendants' Motion to Dismiss requests that the court "grant its Partial Motion to Dismiss as to Counts III-XIII, and XV-XXIV[,]" i.e., Counts 3 through 13 and 15 through 24. (Doc. 17 at 36.) At oral argument, defense counsel stated that Count 18 was not included in their motion. However, seeking dismissal of Counts 15 through 24 would necessarily include Count 18. In addition, Count

---

[1] There is no Count 23, so Counts 24 through 26 are actually Counts 23 through 25.

[2] I note, as did Defendants, that although the complaint names the Federal National Mortgage Association as a defendant, there are no specific allegations against Fannie Mae. (Doc. 17 at 12, n.1.)

2

18 is related to Count 20 in that Count 20 claims negligence *per se* due to a violation of the FCRA and Count 18 claims that the FCRA was violated. Since these claims are related, they will be included for purposes of analysis. As a result, the Court will follow the terms of Defendants' written motion and address Count 18 along with Count 20.

Plaintiff responded to the motion on February 15, 2013, agreeing to dismiss many of the Counts with prejudice, i.e., Counts 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 19, 21, and 22. (Doc. 21.)[3] Therefore, the Counts at issue in the instant motion are Counts 3, 4, 5, 15, 18, 20, 23, and 24. Counts 1, 2, 14 and 25 remain at issue. A hearing was held on March 7, 2013, with counsel for all parties present. Therefore, the motion is ready for report and recommendation.

**B.     Factual Background**

Plaintiff's property is commonly known as 1142 N. 11 Mile Road, Sanford, Michigan (the "property"). (Doc. 1; Doc. 17 at 13.) On December 11, 2002, Plaintiff entered into the subject mortgage with Shore Mortgage. (Doc. 1 at 2; Doc. 17 at Ex. A.)[4] The mortgage named Mortgage Electronic Systems, Inc. ("MERS") as "nominee for Lender and Lender's successors and assigns." (Doc. 17, Ex. A at 2.) On the same date, Plaintiff entered into a promissory note with Shore Mortgage in the amount of $135,000. (Doc. 17, Ex. B.) Plaintiff was subsequently diagnosed with brain cancer in 2008 to 2009 and his "payments on the mortgage were understandably sporadic." (Doc. 1 at 3.) On May 21, 2011, MERS assigned its mortgage interests to BAC Home Loans Servicing, LP. (Doc. 17 at Ex. C.) The assignment was recorded with the Midland County Register

---

[3]During oral argument, Plaintiff's counsel confirmed that he agreed to voluntarily dismiss the claims *with prejudice*.

[4]Plaintiff's wife Angela also entered into the mortgage but she is not a party to this action.

3

of Deeds on May 31, 2011. (*Id.*) Sometime thereafter, BAC Home Loans Servicing, LP, merged with and into Bank of America, N.A. (Doc. 17 at 13.)

Plaintiff chronicles payments made in 2009 and indicates that in June of 2009 he contacted BANA's predecessor to see if a payment plan could be worked out "while he waited for disability payments to commence." (Doc. 1 at 3.) Plaintiff indicates he then "submitted a forbearance agreement and his first reduced payment of $509.56" and that he was "specifically promised [] that if he made all of the forbearance payments on time [for six months], he would then qualify for a hardship loan modification." (*Id.* at 3-4.) Plaintiff avers that he made all of the forbearance payments on time or ahead of schedule so, in January 2010, he "called to see where the loan modification papers were, as these papers had been promised," but instead "[m]ore forbearance papers arrived shortly thereafter" and Plaintiff executed them and "was instructed to continue paying the forbearance." (*Id.* at 4.)

Plaintiff asserts that "Defendant [BANA] denied the loan modification stating that Plaintiff did not send in the necessary paperwork" and that "[t]his was not true." (*Id.*) Plaintiff avers that "Defendant convinced Plaintiff to enter into another forbearance agreement in April of 2010" and "told Plaintiff that he would qualify for a modification under HAMP if he made all reduced forbearance payments on time" in the amount of $572.40, while the mortgage payment amount had been reduced to $943.23. (*Id.* at 4-5.) Plaintiff indicates that he paid the forbearance amount from May 2010 through April 2011. (*Id.* at 5.) Plaintiff further avers that in September of 2010, he "contacted Defendant [BANA] and submitted more documents and information at Defendant's instruction" and that "Defendant told Plaintiff that he met all of the qualifications for a HAMP loan" so he should "keep making the reduced payments until the loan modification papers were drawn up." (*Id.*) Plaintiff alleges that he was told that "the loan modification was in process of

4

being approved" in April 2010; however, in May 2011 and again in August 2011, "Defendant told Plaintiff that he had been denied the loan modification because he did not submit all of the necessary information" even though Plaintiff asserts that he had done so. (*Id.*)

BANA initiated foreclosure proceedings and a Notice of Foreclosure Sale was published in the Midland Daily Newspaper and the Detroit Legal News once each week for four successive weeks from September 9 through September 30, 2011. (Doc. 17 at Ex. D.) Notice was also posted at the subject property on September 17, 2011. (*Id.*) The sale was adjourned and notices published reflecting the adjournment were published in the Midland Daily Newspaper and Detroit Legal News each week from October 11, 2011, through December 6, 2011. (Doc. 17 at 14; Exs. D-F.) On December 6, 2011, the subject property was sold at a sheriff's sale to BANA and on January 6, 2012, BANA conveyed the property to Defendant Fannie Mae. (Doc. 17 at 14; Ex. E.) Plaintiff contends that "[s]ince the sheriff's sale, the Plaintiff has attempted in good faith to continue with the loan modification and has been lied to repeatedly regarding [BANA's] intentions and analysis." (Doc. 1 at 6.) The redemption period expired on December 6, 2012. Mich. Comp. Laws § 600.3240(13).

### C. Motion Standards

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56(c). Since all of the claims are analyzed under the motion to dismiss standards, the motion will be treated as a motion to dismiss.

When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell*

5

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

**D.     Analysis & Conclusions**

6

**1.     Standing**

Plaintiff asks this Court to "[g]rant Plaintiff all legal title to the subject property." (Doc. 1 at 35.) I first suggest that Plaintiff lacks standing to bring this action. Although Plaintiff has asserted that "fraud" occurred, I suggest that the averments are insufficient to allege fraud or provide standing.

Under Michigan law, "[w]hen the redemption period expires, the purchaser of a sheriff's deed is vested with 'all the right, title, and interest' in the property." *Carmack v. Bank of New York Mellon*, No. 12-cv-11669, 2012 WL 2389863, at *2 (E.D. Mich. June 25, 2012) (citing Mich. Comp. Laws § 600.3236). "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud or irregularity." *Overton v. Mortgage Elec. Reg. Sys.*, No. 07-725429, 2009 WL 1507342, at *1 (Mich. Ct. App. 2009). The Michigan Court of Appeals has affirmed the holding in *Overton* even where the plaintiff filed suit before expiration of the redemption period. *Awad v. General Motors Accept. Corp.*, No. 302692, 2012 WL 1415166, at *3 (Mich. Ct. App. 2012). The court reiterated that "[u]pon the expiration of the redemption period, [plaintiff] lost all right, title, and interest in the property and therefore, lost her standing to sue." *Id.*; *accord Williams v. Pledged Property II, LLC*, ___ F. App'x ___, 2012 WL 62000270, at *2 (6th Cir. Dec. 13, 2012); *Kumar v. U.S. Bank Nat'l Ass'n,* No. 12-cv-12624, 2013 WL 783999, at *2 (E.D. Mich. Mar. 1, 2013); *Costell v. Bank of New York Mellon*, No. 12-cv-15063, 2013 WL 317746, at *3 (E.D. Mich. Jan. 28, 20130) ("The commencement of legal proceedings prior to the expiration of the redemption period does not preserve a mortgagor's standing to challenge the foreclosure sale"); *Allor v. Federal Home Loan Mort. Corp.*, No. 12-12290, 2012 WL 5265738, at *2 (E.D. Mich. Oct. 24, 2012); *Sylvester v.*

*Fannie Mae*, No. 12-13186, 2012 WL 4694348, at *2 (E.D. Mich. Oct. 3, 2012) ("that Plaintiff filed her suit before the redemption period expired does nothing to advance her claims"); *Chungag v. Wells Fargo Bank, N.A.*, No. 12-11073, 2012 WL 1945483, at *4 (E.D. Mich. May 30, 2012); *Duff v. Federal Nat'l Mort. Ass'n,* No. 11-cv-12474, 2012 WL 692120, at *3 (E.D. Mich. Feb. 29, 2012); *Luster v. Mortgage Elec. Reg. Sys.,* No. 11-CV-14166, 2012 WL 124967, at *2 (E.D. Mich. Jan. 17, 2012).[5]

The Sixth Circuit has held in several unpublished decisions that the Michigan "holdings 'do[] not turn on [the] standing doctrine[]'" but that it is "more accurate to say that the 'fraud or irregularity' claims in *Overton, Awad,* and *Mission of Love* lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale." *El-Seblani v. Indymac Mort. Servs.*, ___ F. App'x ___, 2013 WL 69226 (6th Cir. Jan. 7, 2013) (citing *Houston v. U.S. Bank Home Mort. Wisc. Serv.*, No. 11-2444, 2012 WL 5869918, at * 4 (6th Cir. Nov. 20, 2012)). The high standard referred to by the Sixth Circuit is "whether [the plaintiff] made a sufficient showing of 'fraud or irregularity' in connection with the sheriff's sale of his home to 'undo the divestment of [his] property.'" *El-Seblani*, 2013 WL 69226, at *4; *Houston*, 2012 WL 5869918, at *5. Since the analysis is identical, whether it is called standing or not, I suggest that conclusion remains the same: Plaintiff in the instant case lacks standing or is otherwise unable to proceed unless he makes a clear showing of fraud or irregularity.

---

[5]*But see Ahmad v. Wells Fargo Bank, N.A.*, 861 F. Supp. 2d 818, 823-24 (E.D. Mich. Mar. 19, 2012) (disagreeing with cases finding that plaintiffs lack standing after redemption period expires because plaintiffs are the last owner and possessor of the property and often remain in possession of the property notwithstanding any sheriff's sale, which should satisfy the injury-in-fact requirements for standing, but ultimately concluding that the "court does not need to resolve Plaintiffs' standing . . . because, even assuming they have such standing, their claims are still subject to dismissal . . . ."); and *Moss v. Wells Fargo Bank, N.A.*, No. 11-13429, 2012 WL 1050069, at *3-4 (E.D. Mich. 2012).

Plaintiff argues that he has shown fraud or irregularity in the process because he "has alleged that notice was not provided during the foreclosure process" and has "specifically raised equitable defenses." (Doc. 21 at 14.) However, the evidence shows that at the time of the sale, Defendant BANA was the record holder of the mortgage[6] on Plaintiff's property and, thus, was authorized to foreclose by advertisement. Mich. Comp. Laws § 600.3204(1)(d), (3); *Yunanova v. BAC Home Loans Serv., LP*, No. 2:10-cv-14156, 2012 WL 441161, at *5 (E.D. Mich. Feb. 10, 2012) (dismissing claim under Mich. Comp. Laws § 600.3204 where MERS assigned mortgage to Wells Fargo and Wells Fargo commenced foreclosure). In addition, BANA published the requisite Notice of Foreclosure Sale in the Midland Daily Newspaper and the Detroit Legal News once each week for four successive weeks from September 9 through September 30, 2011. (Doc. 17 at Ex. D.) Notice was also posted at the subject property on September 17, 2011. (*Id.*) The sale was adjourned and notices reflecting the adjournment were published in the Midland Daily Newspaper and Detroit Legal News each week from October 11, 2011, through December 6, 2011. (Doc. 17 at 14; Exs. D-F.)

Therefore, I suggest that Plaintiffs have not averred any irregularity or defect in the foreclosure that could even arguably provide Plaintiffs with standing or could otherwise make "a sufficient showing of 'fraud or irregularity' in connection with the sheriff's sale of his home to 'undo the divestment of [his] property.'" *El-Seblani*, 2013 WL 69226, at *4; *Houston*, 2012 WL

---

[6] To be the record holder of the mortgage, Defendant needed to record its mortgage interest before the scheduled date of sale, which it did. *See* Mich. Comp. Laws § 600.3204(3).

5869918, at *5.[7] I therefore suggest that Defendants' motion to dismiss should be granted on this ground alone as to all claims challenging the foreclosure process, i.e., Counts 3, 4, 5, 14, and 15.

### 2. Merits

Even if Plaintiff has standing, I suggest that he has not stated a claim for relief in any of the challenged Counts, including Counts 3, 4, 5, 14, and 15. For the reasons which follow, I therefore suggest that Defendants' motion to dismiss should be granted.

### a. Defamation of Title (Count 3)

The elements of a slander of title claim are: (1) falsity of statement, (2) malice or intent to harass, and (3) special damages. *B&B Invest. Group v. Gitler*, 581 N.W.2d 17 (Mich. Ct. App. 1998); Mich. Comp. Laws § 565.108. "Malice may not be inferred from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to

---

[7]I further note that even if there had been a defect or irregularity in the notice of the foreclosure or the foreclosure proceeding itself, any such defect would have rendered the foreclosure voidable and not void. *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 118, 825 N.W.2d 329 (2012) ("we hold that defects or irregularities in a foreclosure proceeding result in a foreclosure sale that is voidable, not void *ab initio*"); *Jackson Inv. Corp. v. Pittsfield Prod., Inc.,* 162 Mich. App. 750, 755, 413 N.W.2d 99, 101 (1987) ("A defect in notice renders a foreclosure sale voidable and not void."); *Mitan v. Fed. Home Loan Mort. Corp.*, 703 F.3d 949, 952 (6th Cir. 2012) ("Notice defects render a foreclosure voidable"). Since the sale is voidable, plaintiffs "must show that they were prejudiced by defendant's failure to comply with MCL 600.3204," i.e., "that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim*, 493 Mich. at 118.
  Federal case law has consistently held that where plaintiffs have admitted default, received notice of default, failed to show they had the funds to outbid the highest bidder at the sale, let alone pay the entire unpaid balance owing on the loan, and showed no attempt to redeem the property, they cannot show how any alleged defects in the notice prejudiced them. *See, e.g., Harrison v. Bank of America, N.A.,* No. 12-cv-12281, 2013 WL 440163, at *4 (E.D. Mich. Jan 17, 2013); *Elson v. Deutsche Bank Nat'l Trust Co.*, No. 11-14100, 2012 WL 1902916, at *6 (E.D. Mich. May 25, 2012); *Piccirilli v. Wells Fargo Bank, N.A.*, No. 2:11-cv-10264, 2012 WL 1094333, at *7 (E.D. Mich. Mar. 30, 2012); *Caillouette v. Wells Fargo Bank, N.A.*, No. 11-cv-10204, 2012 WL 1033498, at *8 (E.D. Mich. Mar. 27, 2012).
  I suggest that Plaintiff in the instant case suffers from the same failure: he has not sufficiently alleged prejudice. Here, Plaintiff has not challenged the fact that he defaulted on the loan, nor has he contended that he was not aware that the property was scheduled for foreclosure sale. In addition, Plaintiff has not alleged that he ever attempted to redeem the property, and he has not alleged that he had sufficient funds to outbid the highest bidder at the sale, let alone pay off the entire loan. Thus, even if he could show some defect in notice, I further suggest that he cannot receive the relief he requests, i.e., a declaration that the sheriff's deed is void. I therefore suggest that Defendants' motion to dismiss be granted based on Plaintiff's lack of standing (or failure to meet the requirements of fraud or irregularity) and inability to achieve the relief requested.

cause the plaintiff injury." *Scranton v. Dachille*, 463 N.W.2d 479, 486 (Mich. Ct. App. 1990). In the mortgage foreclosure context, these elements have been met where defendants falsely represented that the plaintiff defaulted when the plaintiff had never defaulted and where the trial court drew an adverse inference that the defendants acted with malice where the defendants did not testify or come forward with any explanation for their actions. *See Gipson v. Belvedere Constr., Inc.*, No. 296765, 2011 WL 2651866, at * 3-4 (Mich. Ct. App. July 7, 2011). Neither of these scenarios occurred here. In the instant case, Plaintiff has not challenged the fact that he defaulted on his mortgage payments. Since Plaintiff has not pleaded facts sufficient to support either the falsity or malice elements, I suggest that Defendants' motion to dismiss should be granted on this claim.

      **b.**    **Quiet Title (Count 4)**

Plaintiff seeks "discharge of lien and claim to quiet title" in Count 4. Under Michigan law, an action to quite title is "equitable in nature." Mich. Comp. Laws § 600.2932(5). The doctrine of unclean hands applies in equitable actions, including quiet title actions. *McFerren v. B&B Inv. Group*, 655 N.W.2d 779 (Mich. Ct. App. 2002). "The clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (*Id.* at 783 (citations omitted).) Where, as here, Plaintiff received $135,000, failed to pay the debt as agreed and then "sought judicial assistance in avoiding [his] contractual obligations[,]" the doctrine of unclean hands applies to close the doors to equitable relief, such as quiet title. *See also Yuille v. American Home Mort. Servs., Inc.*, No. 10-2564, 2012 WL 1914056, at *1-2 (6th Cir. May 29, 2012). I further suggest that even if the merits were addressed, Plaintiff

has not met his burden to establish a prima facie case of title free of valid liens. I therefore suggest that this claim be dismissed.

### c. Violation of Mich. Comp. Laws § 600.3205 (Counts 5 and 15)

Plaintiff's claim for violation of Michigan foreclosure law, Mich. Comp. Laws § 600.3205, asserts that Defendant BANA improperly failed to "provide Plaintiff with a mediation" or with an opportunity to complete loan modification analysis prior to foreclosure. However, Michigan law "merely require[s] a lender to consider a borrower for a loan modification prior to commencing foreclosure by advertisement." *Meyer v. Citimortgage, Inc.,* No. 11-13432, 2012 WL 511995, at *3 (E.D. Mich. Feb. 16, 2012) (citing Mich. Comp. Laws § 600.3205a, *et seq*.). "[T]hese statutes do not require a lender to modify a loan, nor do they give a plaintiff a cause of action for damages." *Id*. *See also Altomonte v. Wells Fargo Bank, N.A.*, No. 11-12878, 2011 WL 4695824, at *2 (E.D. Mich. Oct. 5, 2011). It is unclear what further basis Count 15 alleges since it does not cite to any Michigan law.

To the extent that Plaintiff relies on the United States Department of the Treasury's Home Affordable Mortgage Program ("HAMP") guidelines to assert that a mortgagee has a duty to modify the loan, "HAMP imposes no duty on [a] mortgage lender to modify [a] mortgage even if the borrower meets modification requirements." *Duff v. Federal Nat'l Mort. Ass'n*, No. 2:11-cv-12474, 2012 WL 692120, at *5 (E.D. Mich. Feb. 29, 2012); *accord Dixon v. Wells Fargo Bank, NA*, No. 12-10174, 2012 WL 4450502, at *9 (E.D. Mich. Sept. 25, 2012). Furthermore, HAMP does not create a private cause of action under which a plaintiff may seek relief. *Meyer*, 2012 WL 511995, at *6; *Brown v. Bank of New York Mellon*, No. 1:10-cv-550, 2011 WL 206124, at *2 (W.D. Mich. Jan. 21, 2011) (collecting cases).

Although Plaintiff indicated during oral argument that he was not attempting to enforce an oral promise, and thus, would not be subject to the statute of frauds, I suggest that the claim in fact rests on the factual averments in the complaint regarding oral assurances made by employees of Defendant BANA. (Doc. 1 at 3-6.) To the extent that Plaintiff is seeking to enforce oral promises, such claims would be barred by the statute of frauds. *Williams,* 2012 WL 6200270, at *3-4 (6th Cir. Dec. 13, 2012) (noting that the Michigan statute of frauds applies to promises to delay foreclosure sales and that such oral promises may not be enforced).

I therefore suggest that Plaintiff has failed to state claims under these two Counts and that Defendants' motion to dismiss should be granted as to these claims.

### d.     FCRA (Counts 18 and 20)

Plaintiff avers violation of the FCRA and negligence *per se* based on violation of the FCRA. 15 U.S.C. § 1681s-2(b). (Doc. 1, Counts 18 and 20.) The purpose of the FCRA is to require that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The Sixth Circuit has held that consumers may file actions pursuant to sections 1681n and 1681o of the FCRA, claiming that furnishers of information have violated section 1681s-2. *Boggio v. USAA Federal Savings Bank*, 696 F.3d 611, 615 (6th Cir. 2012). Section 1681s-2 requires a furnisher to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681–2(b)(1)(A). Our circuit also "join[ed] every circuit to have addressed this duty in holding that the investigation an information furnisher undertakes must be a reasonable one." *Boggio*, 696 F.3d at 616. The Sixth Circuit then considered cases discussing how thorough an investigation must be to be considered reasonable.

13

The *Boggio* court cited *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 429-31 (4th Cir. 2004), which held that "electronically confirming only a name and address – as opposed to 'consult[ing] underlying documents, such as account applications' – was unreasonable when the furnisher had received information from the CRA explaining that its consumer was disputing her status as a co-obligor on her husband's debt." *Boggio*, 696 at 617. The Sixth Circuit contrasted *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1159-61 (9th Cir. 2009), where summary judgment was properly granted in favor of the furnisher because, "'unlike in *Johnson*, [the furnisher] had – albeit earlier – gone outside its own records to investigate the allegations contained in the CRA notice.'" *Boggio* at 617.

There are no allegations in the instant case that Defendant BANA acted as a furnisher of credit information to a credit reporting source, nor is there any allegation that Plaintiff submitted a dispute that would trigger any duty on the part of Defendant BANA to investigate. I therefore suggest that these claims be dismissed. *See also Reschke v. Citimortgage, Inc.*, No. 11-12639, 2013 WL 625755, at *5 (E.D. Mich. Feb. 20, 2013) (dismissing FCRA claim based on mortgage foreclosure where the plaintiffs did not allege that the "defendants furnished credit information to anyone").

### e. FDCPA (Count 23)

Plaintiff avers a violation of the FDCPA, 15 U.S.C. § 1692a(6), based on Defendant BANA's attempt to collect a debt against Plaintiff. The FDCPA provides that

14

> "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another . . . which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6). Thus, "a creditor is not a debt collector under the FDCPA . . . [n]or is the assignee of a debt that was not in default at the time it was assigned." *Joyner v. MERS*, 451 F. App'x 505, 507 (6th Cir. 2011) (citations omitted). This provision is based on the premise that "[a]n entity that acquires a current, non-defaulted debt in order simply to continue servicing it 'is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector.'" *Sullivan v. Ocwen Loan Servicing, LLC*, No. 08-cv-02079, 2009 WL 103681, at *2 (D. Colo. Jan. 14, 2009) (citations omitted) (holding that where the defendant obtained a non-defaulted debt under the mistaken belief that the debt was in default, and where the defendant's subsequent collection activities were based on that mistaken belief, the defendant was a debt collector for purposes of the FDCPA).

Plaintiff bears the burden of establishing that Defendant is a debt collector. *Golliday v. Chase Home Finance, LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011). I suggest that Plaintiff cannot meet that burden.

Defendant BANA acquired the mortgage interest from BAC Home Loans Servicing via merger with BAC Home Loans Servicing, rather than through an assignment. At least one circuit court has held that when a defendant company acquires a debt though its merger with a previous creditor of the plaintiff rather than via a specific assignment, the debt was not "obtained" while it was in default; thus, the defendant company was not a debt collector under the FDCPA. *Brown v. Morris*, 243 F. App'x 31, 34 (5th Cir. 2007) ("ABN AMRO, a mortgage company, was not specifically assigned Brown's mortgage for debt-collection purposes. Rather, ABN AMRO

15

acquired it through its merger with Brown's previous mortgage company. Accordingly, ABN AMRO did not 'obtain' her mortgage while it was in default" and ABN AMRO was therefore "not an FDCPA debt collector").[8]

I suggest that the Fifth Circuit's analysis is supported by the rationale behind the exemption and the law regarding mergers, and thus should be followed. Like the entity "that acquires a current, non-defaulted debt in order simply to continue servicing it" is "'acting much like the original creditor that created the debt," Defendant, via the merger, acquired all the assets and debts of BAC Home Loans Servicing and is therefore "much like" the original creditor. *Sullivan, supra.* After a merger, the resulting entity is the "receiving association," which "shall be deemed to be the same corporation as each bank or banking association participating in the merger." 12 U.S.C. § 215a(e). Consequently, after a merger with a creditor bank, the surviving corporation is not only "much like" the original creditor, it *is* the original creditor. Thus, since Defendant was attempting to collect a debt originally owed to BAC Home Loans Servicing after these entities merged, it should not be considered a debt collector. *See Sprague v. Neil*, No. 1:05-CV-1605, 2007 WL 3085604, at *3 (M.D. Pa. Oct. 19, 2007) ("By way of merger . . . Citibank assumed all rights and property, including Plaintiff's debt, as its own and thus stands in the shoes of the previous two banks[;] . . . it was not collecting a debt owed to a third party as a debt collector.").

Accordingly, I suggest that Defendant BANA should not be considered a debt collector within the meaning of the FDCPA and that Defendant's motion to dismiss should be granted as to this Count.

---

[8]This result would not be altered by the fact that at the time of the assignment to BAC Home Loans Servicing (BANA's predecessor), which occurred on May 21, 2011, Plaintiff was already in default. (Doc. 1; Doc. 17 at Ex. C.) *See Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1282 n.2 (M.D. Ala. 2011) (citing *Brown, supra*).

16

Should the Court disagree with this analysis, I suggest that the merits of the claim would need to be addressed under current Sixth Circuit precedent. The Sixth Circuit previously held that "an enforcer of a security interest . . . does not meet the statutory definition of a debt collector under the FDCPA" except under section 1692f(6),[9] which was not alleged in that case, nor is it alleged here. *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-01 (6th Cir. 2003). *See also Newman v. Trott & Trott, P.C.*, ___ F. Supp. 2d ___, 2012 WL 3639121, at *9 (E.D. Mich. Aug. 24, 2012) (clarifying that *Montgomery* does not prevent an entity whose principal purpose is to collect debts from being considered a debt collector but rather prevents a person or entity from being considered a debt collector based solely on a foreclosure of a mortgage or other attempt to enforce a security interest); *Stamper v. Wilson & Associates, PLLC*, No. 3:09-cv-270, 2010 WL 1408585, at *7 (E.D. Tenn. Mar. 31, 2010) (collecting cases holding that enforcement of a security interest does not constitute collection of a debt under the FDCPA).

However, the Sixth Circuit recently held that "mortgage foreclosure is debt collection under the Act[,]" indicating that the court had heretofore "not addressed the issue." *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453, 459, 464-65 (6th Cir. 2013); *but see Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308 (6th Cir. 2004) (mortgage foreclosure proceeding was not a "consumer debt [collection] or transaction within the meaning of the act [FDCPA].").

  **f.**  **Michigan Occupational Code ("MOC") (Count 24)**

---

[9]Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if - - (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

17

Plaintiff avers a violation of The MOC, Mich. Comp. Laws § 339.901(b), based on Defendant BANA's foreclosure, which Plaintiff contends was an attempt to collect a debt. The MOC applies only to collection agencies. Michigan law provides that the term

> "collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be due another . . . . Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to, the following: (i) A regular employee when collecting amounts for 1 employer if all collection efforts are carried on in the name of the employer; (ii) A state or nationally chartered bank when collecting its own claims[.]

Mich. Comp. Laws § 339.901. Since Defendant BANA is a nationally chartered bank attempting to collect its own claims, i.e., mortgage debt, I suggest that Defendant is expressly exempt from the purview of the MOC and that Defendant's motion to dismiss should be granted with regard to Plaintiff's MOC claim.

### g.   Plaintiff's Request to Amend

Plaintiff requested that he be granted leave to amend should the court "disagree[]" and find that the claims remaining after his voluntary dismissal do not "plead good and sufficient facts" to survive the motion to dismiss. (Doc. 21 at 18.) I note that Plaintiff could have filed an amended pleading without leave of the court within 21 days after service of the instant motion filed under Rule 12(b)(6). Fed. R. Civ. P. 15(a)(1)(B). However, Plaintiff chose to wait and request amendment should he not succeed in this motion. Since Plaintiff has not attached a proposed amended complaint, Plaintiff has not complied with E.D. Mich. Local Rule 15.1, and the court is unable to analyze the propriety of any such request. Accordingly, I suggest that Plaintiff's request be denied.

### E.   Conclusion

For the reasons stated above, I suggest that Defendant's motion to dismiss should be granted as to all claims challenged, i.e., Counts 3, 4, 5, 14, 15, 18, 20, 23,[10] and 24.[11] I further suggest that Counts 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 19, 21, and 22 should be dismissed with prejudice pursuant to Plaintiff's stipulation.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                                     s/ Charles E. Binder
                                                     CHARLES E. BINDER
Dated: March 19, 2013                                United States Magistrate Judge

---

[10]Labeled 24 in the Complaint.

[11]Labeled 25 in the Complaint.

**CERTIFICATION**

  I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  March 19, 2013       By  s/Patricia T. Morris
                 Law Clerk to Magistrate Judge Binder